IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL CARDON,

    Plaintiff,

vs.                                                                             Civil No. 06-420 WJ/KBM

GLOBAL EXPERTISE IN OUTSOURCING,
INC. (GEO), WARDEN JAMES JANECKA,
SGT. D. MARTINEZ #9384, C/O D. ACOSTA,
C/O R. HERNANDEZ, and LT. F. VALERIANO,
JOHN DOE I - X, and JANE DOE I - X,

    Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 24).  Having reviewed the motion, the submission of the parties and being fully advised on the relevant law, I conclude the motion is not well taken and will be denied.

**BACKGROUND**

Plaintiff initially filed a Complaint in state court pro se on April 12, 2005.  On October 24, 2005, Plaintiff obtained representation of counsel.  By leave of Court, Plaintiff filed an amended complaint on May 15, 2006.  The First Amended Complaint alleged claims for violations of Plaintiff's rights under the Constitution of the United States pursuant to 42 U.S.C. §§ 1981, 1983 and 1988 and violations of his rights under New Mexico state law.  On May 17, 2006, Defendants removed the case to this Court.  Defendants now move the Court for summary judgment arguing

that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e and under N.M. Stat. Ann. 1978 § 33-2-11(B).

At the time Plaintiff filed his original Complaint, he was incarcerated at the Lea County Correctional Facility ("LCCF").  The events giving rise to Plaintiff's claims allegedly occurred on or near August 4, 2004 while Plaintiff was incarcerated at LCCF.  At the time of the filing of this lawsuit, LCCF had an Inmate Grievance policy and procedure.  The 1999 version of the procedure required an inmate to file a formal grievance within fifteen calendar days of an alleged incident and authorized the grievance coordinator to reject a grievance that was not timely filed.  The 2004 revision of the procedure required an inmate to file a formal grievance within twenty days of an alleged incident and authorized the grievance coordinator to reject a grievance that was not timely filed.  However, the grievance coordinator at LCCF generally did not reject grievances that were filed untimely.

Both the 1999 and 2004 versions of the grievance policy require an inmate to complete a separate grievance form for each issue grieved.  However, the policy does not define "issue".  The grievance form sets forth five steps in the grievance process.  The first two steps are on the first page of the form, and this page was given to an inmate when he requested a grievance form. "Step 1" is the section in which the inmate states his grievance and indicates the relief requested. "Step 2", also on the first page, is the section in which the grievance coordinator indicates whether the grievance is accepted for consideration.  After an inmate completed "Step 1", he submitted it to the grievance coordinator.  Inmates were told to submit grievance forms directly to the grievance coordinator or place them in one of the "grievance boxes."  However, inmates also gave grievance forms to staff members to pass along to the grievance coordinator.  The grievance

coordinator would not reject grievances simply because they were delivered by methods other than being placed in the grievance box or being directly delivered; a grievance would be accepted even if it was slid under the grievance coordinator's office door.

After he received a grievance form with "Step 1" filled out, the grievance coordinator would fill out "Step 2" indicating whether the grievance was accepted or not. A copy of this page was returned to the inmate. If the grievance was accepted, the grievance coordinator then conducted an investigation, summarized the evidence gathered in that investigation and made a recommendation to the warden in "Step 3" on the second page of the form. Under the 2004 policy, the grievance coordinator was to complete this within 20 days of receiving the inmate's grievance. The grievance coordinator at LCCF testified that there was a backlog of grievances, and "Step 3" was sometimes not completed within the 20 day time limit. In "Step 4", also on the second page of the grievance form, the warden granted or denied the inmate's grievance based on the grievance coordinator's summary and recommendation. The warden then returned the form to the grievance coordinator who made copies for the record and returned the original to the inmate.

"Step 5", at the end of the second page of the form, was the space for an inmate to make a departmental appeal of the warden's decision. If an inmate chose to bring such an appeal, he would fill out "Step 5" and return the form to the grievance coordinator. While the 2004 policy indicates that an inmate may submit the appeal the to grievance coordinator by mail, by placement in an institutional mailbox, by placement in a grievance box, or by delivering it directly to the grievance coordinator, the grievance coordinator accepted grievances submitted through staff or even by slipping it under the door of the his office.

In this case, Plaintiff prepared a formal grievance to address an incident that allegedly occurred on August 4, 2004. He alleged that three corrections officers used excessive force and that he received inadequate medical treatment for resulting injuries. The grievance coordinator did not receive Plaintiff's grievance until September 16, 2004 which was outside the 20 days in which an inmate was to submit a grievance under the 2004 policy. Additionally, according to Defendants, Plaintiff raised two issues - excessive force and inadequate medical treatment - in a single grievance. While Plaintiff raises arguments in response to these facts, these facts are not material for purpose of this dispute. Regardless whether the grievance was timely filed or raised a single or multiple issues, the grievance was accepted by the grievance coordinator. Moreover, Defendants do not argue that Plaintiff failed to exhaust his administrative remedies because he did not timely file his grievance or because he did not properly submit a separate grievance form for each issue grieved. Thus, these facts do not affect the outcome of the issues raised in the motion, and the Court need not concern itself with any dispute over these facts.

In "Step 3" of Plaintiff's grievance, the grievance coordinator recommended that Plaintiff's grievance be denied. The Programs Warden at LCCF denied Plaintiff's grievance in "Step 4" on October 11, 2004. The grievance packet was returned to Plaintiff that same day.

Plaintiff sent a letter to the Risk Management Division of the State of New Mexico to appeal his grievance because he believed this was a method to appeal the warden's determination of his grievance. On November 12, 2004, the Risk Management Division wrote to Plaintiff and informed him that it did not insure LCCF, and that Plaintiff's "claim" was being forwarded to the facility. Facility records contain no indication that Plaintiff ever submitted an appeal to the grievance coordinator by completing "Step 5" of the grievance packet. The grievance

coordinator testified that he never failed to log a grievance or appeal that he received. However, the grievance coordinator also acknowledged that he cannot log items that are not received, and there is a possibility that a grievance or appeal given to a staff member or slipped under the office door might not actually be received and logged.

Plaintiff testified at his deposition that, in addition to attempting an appeal to the Risk Management Division, he made two attempts to file an appeal by completing "Step 5" of the grievance form. According to Plaintiff, he submitted the grievance form with "Step 5" completed but never heard back from the grievance coordinator so submitted a second appeal with "Step 5" completed. He provided a copy of the second page of the grievance form with "Step 5" filled out and dated December 19, 2004 and testified that this was the second attempt to appeal the warden's decision by completing "Step 5".

Defendants filed the instant motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies under the PLRA and under N.M. Stat. Ann. 1978 § 33-2-11(B).

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In ruling on a

motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133, 1150 (10th Cir. 2005).  In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  Worrell, 219 F.3d at 1204.

**DISCUSSION**

Defendants argue that they are entitled to summary judgment under the PLRA for Plaintiff's federal claims and under New Mexico state law for Plaintiff's state law claims based on Plaintiff's failure to exhaust administrative remedies.  Under the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Under New Mexico law, "No court of this state shall acquire subject-matter jurisdiction over any complaint, petition, grievance or civil action filed by any inmate of the corrections department with regard to any cause of action pursuant to state law that is substantially related to the inmate's incarceration by the correction department until the inmate exhausts the corrections department's internal grievance procedure."  N.M. Stat. Ann. 1978 § 33-2-11(A).  The United States Supreme Court has made clear that the exhaustion requirement of the PLRA is an affirmative defense, Jones v. Bock, 127 S.Ct. 910, 921 (2007), and the Tenth Circuit has clarified that a defendant bears the burden of proof on the issue of exhaustion under the PLRA, Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).  On the other hand, the New Mexico exhaustion requirement is clearly

jurisdictional. Neither party differentiated between the exhaustion requirement for Plaintiff's state law claims and the exhaustion requirement for Plaintiff's claims under federal law.

Plaintiff's federal and state law claims arise from the same operative facts, Plaintiff's state law claims sound in tort, and it is well recognized that "claims brought pursuant to § 1983 sound in tort." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709 (1999). Thus, the federal and state law claims are inseparable, and the PLRA standard will be applied to both federal and state law claims at this stage of the case to prevent a state jurisdictional standard from affecting federal rights.

There are issues of fact with regard to exhaustion that preclude summary judgment. Defendants' logs indicating that no appeal of the grievance was received from Plaintiff are contradicted by Plaintiff's copy of an alleged appeal and his testimony that he submitted the appeal. Defendants contend that Plaintiff's testimony and the document are not credible because of surrounding circumstances including the fact that the document was not produced until the issue of exhaustion was raised, the document includes only the second and not the first page of the grievance form, and Plaintiff does not remember by what method he submitted the appeal to the grievance coordinator. However, the Court does not weigh credibility when ruling on a motion for summary judgment, and it cannot be said that the evidence is so one-sided that Defendants must prevail as a matter of law. Accordingly, Defendants' Motion for Summary Judgment shall be denied.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 24) is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE