IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL CARDON,

       Plaintiff,

v.                                                                   CIV 06-0420 WJ/KBM

GLOBAL ENTERPRISE IN
OUTSOURCING, INC., *et al.*,

       Defendants.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

      THIS MATTER is before the Court on Defendants' motion seeking dismissal of the action for Plaintiff's discovery and court-ordered pretrial preparation deficiencies. Alternatively, they ask that the pretrial order be struck, Plaintiff be denied permission to call any witnesses other than himself, and Plaintiff only be permitted to admit the exhibits contained in a May 2008 exhibit list. *Doc. 73* at 6. After a hearing, presiding District Judge Johnson found that:

> Defendants contend that Plaintiff disclosed medical
> documents and medical witnesses months after the
> discovery deadline closed, notwithstanding several

> extensions of time Plaintiff had obtained in phone conferences with the Magistrate Judge. Having reviewed the pleadings and heard arguments of counsel, the Court finds that Defendants would be unduly prejudiced if Dr. Hill and Dr. Reeves testify at trial without Defendants having had an opportunity to depose these witnesses, or adequate time to consider other strategies in light of Plaintiff's identification of these witnesses.

*Doc. 108* at 1-2. Consequently, he vacated the trial setting and referred the motion to me for proposed findings. *Id.* at 2. Having considered the arguments raised in the pleadings, I find that an evidentiary hearing is not necessary, and, based on my findings below, conclude that the motion is well-taken in part.

Defendants request sanctions based upon the following: (1)the Pre-Trial Order submitted by Plaintiff's counsel was materially different than the one to which Defense counsel had agreed by adding additional witnesses – Dr. Anthony Reeve and Dr. Roger Hill; and (2) Plaintiff's medical records were not provided to Defendants before the close of discovery deadline. Plaintiff concedes both points but argues that sanctions are not appropriate.

FED. R. CIV. P. 37(b)(2)(A) provides, in part, that:

> If a party . . . fails to obey an order to provide or permit discovery, including an order [concerning a Rule 16 conference, physical and mental examinations, or compelling discovery] the court where the action is pending may issue further just orders. They may include the following:

>   (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
>   (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
>   (iii) striking pleadings in whole or in part;
>
>   (iv) staying further proceedings until the order is obeyed;
>
>   (v) dismissing the action or proceeding in whole or in part;
>
>   (vi) rendering a default judgment against the disobedient party; or
>
>   (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry" that this Court must make. *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). Dismissal is an "extreme sanction" and appropriate in cases where there is "flagrant bad faith" and counsel exhibits a "callous disregard" for his or her responsibilities. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). Tenth Circuit precedent, however, counsels that this Court must first

consider whether a lesser sanction than dismissal will deter the "willful misconduct:"

> dismissal represents an extreme sanction appropriate only in cases of willful misconduct. . . .  In many cases, a lesser sanction will deter the errant party from further misconduct.  "Because dismissal with prejudice 'defeats altogether a litigant's right to access to the courts,' it should be used as 'a weapon of last, rather than first, resort.' " [and in footnote]  Particularly in cases in which a party appears *pro se*, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation.

*Ehrenhaus,* 965 F.2d at 920 (internal citations omitted); *see also e.g., Procter & Gamble Co. v. Haugen,* 427 F.3d 727, 737-38 (10th Cir. 2005) (same).  In deciding whether to dismiss as a sanction:

> The district court's discretion to choose a sanction is limited in that the chosen sanction must be both "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." . . . Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including:  "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant," . . . ; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance . . . ; and (5) the efficacy of lesser sanctions. . . .  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal

> an appropriate sanction."
>
> These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction. The court should ordinarily evaluate these factors on the record.

*Id.* at 920-21 (internal citations omitted); *see also e.g., Procter & Gamble,* 427 F.3d at 738-39 (district court's failure to apply *Ehrenhaus* factors is abuse of discretion).

Applying these factors, I find that dismissal is not warranted. As my prior orders and Clerk's minutes reflect, I have granted extensions but have never discussed or issued a "warning" that dismissal . . . would be a likely sanction for noncompliance." *See Docs. 60, 58, 56, 53.* Nor has the delay in this matter interfered with the judicial process in a significant way. As Judge Johnson noted in his referral, his civil docket was already interrupted by a criminal death penalty case. *See Doc. 108* at 2 ("the Court is in no hurry for Judge Molzen's recommended disposition, as the Court is presiding over a death penalty case scheduled for trial in October of 2009 and this death penalty case will have priority over the instant civil case.").

I must therefore address whether other sanctions short of dismissal may be appropriate. Plaintiff persisted in trying to obtain his medical records by placing the burden of production on Defendants even after being informed that those

5

records were not in their possession or in their control.  Instead the records belonged to The Geo Group, the entity which had contracted to provide medical services at the correctional facility.

I have already rejected Plaintiff's once again-repeated argument that Defendants were somehow obliged under the rules of procedure to obtain the records from the medical provider and then give them to Plaintiff.  As Defendants have pointed out, Plaintiff could have obtained the records by simply providing a medical release directly to that provider – The Geo Group.   Yet I previously found that the delay in obtaining medical evidence was not *wholly* attributable to Plaintiff's counsel:

> I am persuaded that Plaintiff made good faith efforts to obtain the medical records at issue prior to the close of discovery. Mr. Zebas was thwarted, however, by the State's complicated contractual plans for providing medical care at correctional facilities and the long term plans for retention of inmates' medical records.

*Doc. 53* at 1.  Therefore, I will recommend that delay in production not be a basis for exclusion of the medical records at trial.

The issues are more problematic with regards to the newly listed medical witnesses.  Plaintiff asserts that Defendants have been aware of both physicians.  Indeed, Dr. Reeves performed an independent medical examination ("IME") prior

to the close of discovery, and Defendants apparently selected and paid for that exam and received a copy of that report just two weeks after the discovery deadline.[1]  Given that a trial date is not looming and there will be time to depose Dr. Reeve and otherwise prepare for trial, I find that the sanctions requested by Defendants as to his testimony are not warranted at this time.

As to the other newly identified medical witness, however, I am persuaded that sanctions under FED. R. CIV. P. 37(b)(2)(A) are appropriate.  Dr. Hill apparently treated Plaintiff while he was at the correctional facility.  Because some of the medical records were virtually illegible, it was not until other medical personnel were deposed that Dr. Hill was first identified as a person with possible knowledge of Plaintiff's injuries. At a status conference held April 22, 2008, I "gave Mr. Zebas until Friday, April 25, 2008 to find out if Dr. Hill has any recollection of the Plaintiff."  *See Doc. 60.*  My file indicates that on April 25, 2008, Plaintiff's counsel notified both the Court and Defense counsel that he had  just located Dr. Hill but that "Dr. Hill is extremely ill and on the verge of being hospitalized . . . . [and] there is no way of knowing if Dr. Hill has a recollection of Daniel Cardon."  *Zebas E-Mail of 4/25/08* at 1:12 p.m.  Five days later, a note in my file reflects only

---

[1] In their Reply Brief, Defendants maintain that Plaintiff's counsel requested the IME and now misrepresents that it was Defendants who made the request.  Because it was raised for the first time in the Reply, I will not address that issue.

that Mr. Zebas had spoken with Dr. Hill but the contents of that discussion are not mentioned.

It was not until May 13, 2009, however, that Plaintiff actually identified Dr. Hill as a potential witness on his Witness List filed just before the first part of the bifurcated trial was to begin.  *See Doc. 68.*  Dr. Hill was then included as a potential witness in the Pre-Trial Order ("PTO") approved by Judge Johnson three days later.  Again, Plaintiff's counsel admits that the version of the PTO that was approved by Judge Johnson is <u>not</u> the version agreed to by Defense counsel which had omitted any mention of Dr. Hill.  Mr. Zebas offers no real explanation for the discrepancy referring to it as "merely an oversight and not done intentionally."  *Doc. 103-2* at 1.

I find that Plaintiff has not demonstrated good cause for the very late identification of Dr. White, and therefore will recommend that his testimony be excluded at trial.  I believe this sanction is necessary to deter future violations of the rules.  Throughout this litigation, I have bent over backwards to assure that Plaintiff can present his side of the case at trial despite his attorney's failure to fully comply with discovery obligations.  Plaintiff's counsel has manifested a rather casual disregard for the rules that will not be tolerated in the future.

Plaintiff is on notice that all manner of sanctions, including dismissal, will be

considered for any future lack of adherence to the rules or orders of the court. "Dismissal . . . is a strong sanction to be sure, but it is no trifling matter for [litigants] to abuse our office by disappearing and failing to meet our deadlines. The federal courts are not a playground for the petulant or absent-minded; our rules and orders exist, in part, to ensure that the administration of justice occurs in a manner that most efficiently utilizes limited judicial resources." *United States ex rel. Jimenez v. Health Net, Inc.,* 400 F.3d 853, 856 (10th Cir. 2005).

Wherefore,

IT IS HEREBY RECOMMENDED that Defendants' motion for sanctions *(Doc. 73)* be granted in part by excluding the testimony of Dr. Hill at trial. In all other respects, I recommend denial of the motion.

IT IS FURTHER ORDERED that the parties set up a conference call and contact my Administrative Assistant Theresa Arguello at (575) 528-1480 to set up a time for telephonic status conference.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). A party must file any objections with the

Clerk of the District Court within the ten day period if that party wants to

have appellate review of the proposed findings and recommended disposition.

If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE